# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 09 2017, 7:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Clifford M. Robinson
Office of Corporation Counsel
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| City of Indianapolis,<br>*Appellant-Plaintiff*,<br><br>v.<br><br>Erick Amaro-Sanchez,<br>*Appellee-Defendant*. | February 9, 2017<br><br>Court of Appeals Case No.<br>49A02-1510-OV-1721<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Patrick J. Dietrick, Judge<br><br>Trial Court Cause No.<br>49G21-1507-OV-25072 |

**Brown, Judge.**

[1] The City of Indianapolis (the "City") appeals from the trial court's order of judgment entered in favor of Erick Amaro-Sanchez. The City raises one issue, which we revise and restate as whether the court abused its discretion in denying the City's motion to correct error when it did not consider evidence presented at a bond hearing in rendering its judgment. We affirm.

## Facts and Procedural History

[2] On July 29, 2015, the City filed a complaint against Amaro-Sanchez alleging violations of various city ordinances of the Revised Code of the Consolidated City of Indianapolis and Marion County (the "Revised Code") relating to an incident occurring on July 21, 2015, in which three dogs owned or kept by him "escaped from his property and attacked at [sic] ten (10) year old girl, causing severe injuries to her back and legs."[1] Appellant's Appendix at 22. That same day, the City filed a Petition for Bond to Cover Costs of Impoundment and for an Order on Disposition of Animals (the "Bond Petition") under Section 531-727 of the Revised Code requesting bonding fees for the three dogs, including an impound fee of twenty dollars per dog and kenneling fees of five dollars per dog, per day, for thirty days. On August 5, 2015, the court held a hearing

---

[1] The record on appeal does not contain the complaint. As stated in the Bond Petition referenced below, the violations alleged included:

> Three (3) violations of Section 531-401 (Care and Treatment); three (3) violations of 531-202 (No Permanent Identification); three (3) violations of 531-301 (No Rabies Vaccinations); three (3) violations of 531-302 (No Rabies Tags); two (2) violations of 531-109 (Owner Responsibility for Animal Bite); and two (2) violations of 531-102(c)(2) (At-Large Attack on a Person) . . . ."

Appellant's Appendix at 23.

on the Bond Petition at which the victim, victim's mother, City of Indianapolis Animal Care and Control employees Officer Newinski and Sergeant Webb,[2] and Amaro-Sanchez testified. At the hearing, the City's attorney noted that Amaro-Sanchez had surrendered two of the dogs and that they were seeking impoundment fees for the third dog, which was the oldest of the three dogs. The court discussed the following regarding the standard of review at the hearing:

> [T]he City has to come forward and put forth some evidence[.] And the standard for today's hearing is almost akin to a TRO hearing. The standard is not a preponderance, they don't have to prove their case on the merits of the underlying ordinance violation. The rule required to, and I'm quoting from section 5-32-7-27 B, "IF the Court finds there Is a reasonable likelihood that the City will prevail in the merits of the ordinance enforcement action then the Court shall order the owner to post a cash bond as provided in this section to cover the fees and other costs in the care of the animal for a specific period of time not less than thirty days beginning on the date of the impoundment." . . . And what that means is that the – if we had our trial on the merits of the case on or before [August 21], and the defendant did post that bond and prevailed on the merits of the case, where we have our preponderance of evidence standard then the dog would be returned  The [sic] dog would be kept alive.

Transcript at 98-99. It granted the City's Bond Petition in the amount of $170.

---

[2] The transcript lists "?" as the first names for Officer Newinski and Sergeant Webb. Transcript at 33, 70.

On August 26, 2015, the court held a bench trial on the complaint. At the outset of the trial, the following exchange occurred:

> THE COURT: All right, is there anything that we need to take up before we get into evidence?
>
> [City's Counsel]: No, You Honor. We are just going to ask that you incorporate the evidence that we had at the Bonding.
>
> THE COURT: All right, [defense counsel], the City has made a request that the evidence, and I am looking through the file it looked like there's twenty-one photographs that were admitted into evidence as well as testimony of various witnesses be admitted into this hearing. Does [Amaro-Sanchez] have any response to that request?
>
> [Defense Counsel]: Well, Your Honor, ultimately we were – are we going to have witnesses?
>
> [City's Counsel]: Today, no.
>
> [Defense Counsel]: Your Honor, based on the preliminary testimony that was given, I don't believe that the State has reached its burden. And therefore, I mean without cross examining these defendants, or these alleged victims we believe that the State has not met its burden to even proceed.
>
> THE COURT: Let me ask you this, [City's Counsel]. Does the State have any witnesses that they are going to be calling today?
>
> [City's Counsel]: No, Your Honor. We called our witnesses at the bond hearing. We got all the information that we wanted on the record at that hearing.

THE COURT: Okay. So the City – the City in this case is basically going to incorporate the witness testimony and exhibits that were entered in the bond hearing back on the 5th, I believe. And rest?

[City's Counsel]: Yes, Your Honor.

THE COURT: Okay. [Defense Counsel], notwithstanding your motion, did the defendant intend to put on any additional evidence today?

[Defense Counsel]: We --- well, we were planning on it depending on what the alleged victim may state today, but short of that.

THE COURT: Okay. Okay, interesting. All right, well again it's the City's burden so if the City's position is that the evidence that was presented on the 5th was sufficient to meet their burden for the alleged violations, I guess that's the City's position. Do we want to – or is there going to be argument made on that, [City's Counsel]?

[City's Counsel]: Just in closing, Your Honor, I mean I can do a brief introduction as well, just to kind of refresh the Court. I know it's been about three weeks.

THE COURT: Well, The Court – the Court's familiar with the case. Okay, Yea, well let's go ahead and do – we'll do that and then [Defense Counsel] certainly I'll give the defendant an opportunity to present any evidence that it wishes to present and then make argument as well. Okay?

[Defense Counsel]: That's fine.

*Id.* at 105-107.

[4] Following this exchange, the parties gave opening statements, the City rested, and Amaro-Sanchez testified. The court took the matter under advisement.

[5] On September 3, 2015, the court issued its Order of Judgment stating that Amaro-Sanchez admitted to one violation each as to Sections 531-202, 531-301, and 531-302 of the Revised Code, that the City had to prove by a preponderance of the evidence the defendant's violation of each of the other violations charged in the complaint, and that the City

> has not met its burden in proving the same more specifically that [Amaro-Sanchez] allowed his dog(s) to attack and injure a person who did not provoke the animal prior to the attack and that two (2) of [his] dogs were three (3) months of age or older as a condition precedent to certain violations alleged in the complaint.

Appellant's Appendix at 5. The court found Amaro-Sanchez guilty on the three counts he admitted to violating and not guilty on the remaining violations.

[6] On September 25, 2015, the City filed its motion to correct error asserting that it satisfied its burden and proved each violation by a preponderance of the evidence based upon the evidence presented at the Bond Petition hearing. On September 28, 2015, the court issued its order on the City's motion to correct error stating as follows:

This matter is before the court on the [City's] Motion to Correct Error filed September 25, 2015. For the reasons stated herein, the [City's] Motion is DENIED.

The [City] in its present motion contends that the Court erred in its Order of Judgement against [Amaro-Sanchez] dated September 3, 2015. Specifically, the [City] states that it "fully satisfied its burden in proving by a preponderance of the evidence that the violations alleged in its complaint did occur and that [Amaro-Sanchez's] dogs did bite K.C. on July 21, 2015." Plaintiff's Motion, p. 1.

The Court is at a loss to understand how the [City] can so contend when it put on no witnesses and introduced no evidence at the trial in this case held on August 26, 2015. At trial, the [City] orally moved to introduce and incorporate evidence from an August 5, 2015 animal bonding hearing. [Amaro-Sanchez] objected and did not so stipulate. The [City] thereafter rested without calling any witnesses or introducing any evidence.

* * * * *

. . . [Amaro-Sanchez] at trial on August 26, 2015 did not stipulate, and in fact objected to, the [City's] request to incorporate the testimony presented at the prior bond hearing. [Amaro-Sanchez] rightfully demanded that the [City], the party who brought the Complaint and bore the burden of proving by a preponderance of the evidence each element of its claims, put on its case and meet its burden of proof. . . .

*Id.* at 17, 19.[3]

### Discussion

[7] At the outset, we note that Amaro-Sanchez has failed to file an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing its arguments, and we apply a less stringent standard of review, that is, we may reverse if the appellant establishes *prima facie* error. *D & D NAPA, Inc. v. Unemployment Ins. Appeals of Ind. Dep't of Workforce Dev.*, 44 N.E.3d 67, 73 (Ind. Ct. App. 2015). This rule was established so that we might be relieved of the burden of controverting the arguments advanced in favor of reversal where that burden properly rests with the appellee. *Id.* Questions of law are still reviewed *de novo*. *Id.*

[8] The issue is whether the court abused its discretion in denying the City's motion to correct error when it did not consider evidence presented at a bond hearing in rendering its judgment. Generally, we review rulings on motions to correct error for an abuse of discretion. *Fifty Six LLC v. Metro. Dev. Comm'n of Marion Cty.*, 38 N.E.3d 726, 731 (Ind. Ct. App. 2015), *reh'g denied*; *trans. denied*; *see also Speedway SuperAmerica, LLC v. Holmes*, 885 N.E.2d 1265, 1270 (Ind. 2008), *reh'g denied*. An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before it, or the reasonable

---

[3] Page 18 of the Appellant's Appendix is blank.

inferences drawn therefrom. *Lighty v. Lighty*, 879 N.E.2d 637, 640 (Ind. Ct. App. 2008), *reh'g denied*.

[9] The City argues that the court abused its discretion when it did not consider the evidence presented at the Bond Petition hearing after the City requested that it incorporate by reference such evidence at the outset of the bench trial. It asserts that the court "never indicated that it would not incorporate the evidence – multiple authority exists to permit the incorporation of evidence in similar proceedings." Appellant's Brief at 7. It directs the Court's attention to a previous opinion holding that "[a] trial court may take judicial notice of law, a fact, or of the contents of the pleadings and filings in the case before it." *Arms v. Arms*, 803 N.E.2d 1201, 1209 (Ind. Ct. App. 2004) (citing *Sanders v. State*, 782 N.E.2d 1036 (Ind. Ct. App. 2003); Ind. Evidence Rule 201).

[10] The court in *Arms* held that "incorporating by reference evidence presented in an earlier hearing" is allowable "when doing so would prevent redundancy. That is, courts allow it when it will minimize needless and time-consuming duplication of effort that results in nothing more than the presentation of evidence that is identical to or cumulative of evidence previously placed before the court in the same case." *Id.* at 1209-1210. However, the Court in *Arms* also discussed whether the objecting party would be unfairly prejudiced by the incorporation of the earlier-heard evidence. *See id.* at 1210 (reviewing whether evidence at the earlier hearings was "admitted for a different purpose"). At the August 26, 2015 bench trial, the City asked the court to incorporate the evidence presented at the Bond Petition hearing, noting that it "called [its]

witnesses at the bond hearing. We got all the information that we wanted on the record at that hearing." Transcript at 106. During this exchange, Defense Counsel stated its belief that the City had not met its burden of proof based on the testimony presented at the Bond Petition hearing and that, while he was planning on putting on a defense "depending on what the alleged victim may state today, but short of that," he was unclear how to proceed at trial. *Id.* at 107. The court in its order on the City's motion to correct error stated that Amaro-Sanchez did not stipulate to the City's motion to incorporate and that its statements during the relevant exchange at the bench trial constituted an objection to the same.

[11] For guidance, we turn to the case of *L.H. v. State*, 878 N.E.2d 425 (Ind. Ct. App. 2007), in which this Court explained that evidence from a preliminary child-hearsay evidentiary hearing should not be incorporated into the fact-finding hearing on the merits of the delinquency petition because the fact-finding hearing provided more procedural safeguards than the preliminary hearing. 878 N.E.2d at 429-430. For example, evidence could be received at the preliminary hearing that would not be admissible at the trial. *See* Ind. Evidence Rule 104(a) (when court is deciding preliminary questions, "the court is not bound by evidence rules"). In addition, a party "would clearly approach a child hearsay hearing differently than he would a trial as far as the making of objections and the scope of his questioning." *L.H.*, 878 N.E.2d at 430.

[12] We find that the same logic applies in this instance. As noted above, at the Bond Petition hearing the court applied a reasonable likelihood of success on

the merits standard, which is a lower standard than a preponderance standard. Importantly, there is nothing in the record to indicate that the City gave Amaro-Sanchez notice of its intent to incorporate the testimony from the Bond Petition hearing. The different standards being employed may have led Defense Counsel to alter the scope of his questioning and not question the City's witnesses as forcefully at the Bond Petition hearing as he would have at trial. *See id.* (noting the differences between a preliminary hearing and the trial on the merits may lead counsel to alter "the scope of his questioning"). We conclude that the court did not abuse its discretion in denying the City's motion to correct error.

### *Conclusion*

[13]     For the foregoing reasons, we affirm the trial court's denial of the City's motion to correct error.

[14]     Affirmed.

May, J., concurs.

Baker, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

City of Indianapolis,
*Appellant-Plaintiff,*

v.

Erick Amaro-Sanchez,
*Appellee-Defendant.*

Court of Appeals Case No.
49A02-1510-OV-1721

**Baker, Judge, dissenting.**

I respectfully dissent, because I do not believe that the defendant raised a sufficient objection to the City's request to incorporate the evidence presented at the Bond Petition hearing. I acknowledge the portions of argument where counsel indicated that Amaro-Sanchez had intended to cross-examine the City's witnesses and present his own evidence at that final hearing, but at no point did counsel actually object to the City's request. I assume that the City's attorney arrived at the hearing without witnesses present to testify; if that was, indeed, the case, the defendant's attorney should have requested a continuance so that he could subpoena those witnesses to be present at a future hearing.

It is true, as the majority points out, that an objecting party may have a valid argument that he would be unfairly prejudiced by the incorporation of the earlier-heard evidence. *Arms*, 803 N.E.2d at 1210. Here, however, I do not believe that Amaro-Sanchez was an objecting party. Furthermore, at no point did the trial court indicate that the City's request to incorporate the evidence from the preliminary hearing would be fatal to its case. Had either of these instances occurred—had Amaro-Sanchez objected or moved for a continuance, or the trial court indicated that it expected the City to make its case anew at the final hearing—the City could have adapted and presented evidence. But I do not believe it fair to penalize the City where no objection or concern was raised either by opposing counsel or by the trial court. As a result, I would reverse the trial court's order and remand with instructions that it consider the evidence presented at the Bond Petition hearing.